**In re H. F. PIKE, Debtor.**

**Jerry Katz, Appellant,**

**v.**

**H. F. Pike, Appellee.**

**BAP No. CC–99–1441–MaPMe.**

**Bankruptcy No. SA 98–25680 LR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 1999.

Decided Dec. 28, 1999.

Timothy J. Silverman, Solomon, Grindle, Silverman & Spinella, San Diego, CA, for Jerry Katz.

Donald Segretti, Costa Mesa, CA, for H.F. Pike.

Before MARLAR, PERRIS and MEYERS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

In this appeal, a creditor asserts that his judicial lien, which was created prior to the declared homestead, cannot be avoided, even though it impairs the debtor's homestead exemption pursuant to § 522(f) of the Bankruptcy Code. The creditor argues that the Code is silent on this priority issue, and he would have the Panel rule in his favor based on his lien status under California law.

### STATEMENT OF FACTS

Jerry Katz ("Katz") recorded an abstract of judgment against all real property owned by the debtor, H.F. Pike ("Debtor") in the amount of $48,224.23, on August 9, 1996. Debtor owned residential real property located at 424 N. Downey Lane, Placentia, Orange County, California ("the property"). One year later, in November, 1997, Katz renewed the judgment in the principal amount of $83,902.88, and re-recorded an abstract of judgment for that amount.

On December 27, 1996, Debtor recorded a declaration of homestead. Debtor filed a voluntary chapter 7 bankruptcy petition on November 19, 1998, and claimed a homestead exemption in the amount of $75,000.

Debtor proceeded to avoid Katz's lien, by filing a motion and declaration. Debtor declared that the fair market value of the property was $450,000, and also attached his appraiser's letter opinion that the prop-

erty was worth $460,000. The appraiser stated that his report would follow, and it was filed on May 21, 1999. Debtor's appraiser valued the property at $470,000.

Debtor declared that the property was encumbered by the following liens:

| LENDER | TYPE OF LIEN | DATE LIEN RECORDED | CURRENT AMOUNT |
|---|---|---|---|
| World Savings & Loan | Consensual | 5/28/96 | $361,917.38 |
| First Plus Financial | Consensual | 7/18/96 | $ 49,310.50 |
| | | TOTAL CONSENSUAL LIENS: | $411,227.88 |
| Jerry Katz | Judicial | 8/9/96 | $ 48,224.23 |
| Jerry Katz | Judicial | 11/21/97 | $ 83,902.88 |
| Transamerica Commercial Financial | Judicial | 5/21/98 | $ 33,618.62 |

Katz opposed the motion, and asked for a continuance in order to obtain an appraisal.

The hearing on the motion was set for June 15, 1999. On June 9, 1999, Katz filed a Supplemental Opposition, and attached an appraiser's report, which stated the property was worth $475,000. Debtor objected to the untimely pleading and report.

At the June 15th hearing, the bankruptcy judge ruled that Katz's Supplemental Opposition was untimely and "should not be considered." The court, nevertheless, addressed the legal arguments raised for the first time in that pleading, and concluded that the fact that the first abstract of judgment predated the recording of Debtor's declared homestead and Debtor's bankruptcy filing had "no bearing in the bankruptcy context."

The order granting the motion to avoid both of Katz's liens was entered on June 23, 1999, and Katz timely appealed.

### ISSUES

1. Whether the issue on appeal was considered by the bankruptcy court, or is otherwise reviewable by the Panel.

2. Whether Katz's judicial lien, which was recorded prior to Debtor's declared

homestead, can be avoided because it impairs Debtor's homestead exemption under 11 U.S.C. § 522(f)(2)(A).

## STANDARD OF REVIEW

■ This appeal raises legal questions regarding statutory construction, which are reviewed *de novo*. *In re Hanger*, 217 B.R. 592, 594 (9th Cir. BAP 1997), *aff'd*, 196 F.3d 1292 (9th Cir.1999).

## DISCUSSION

### A. Scope of the Appeal

■ Katz raised the legal issue, which is the subject of this appeal, in his Supplemental Opposition, which was filed six days prior to the bankruptcy court hearing. Katz also filed his appraiser's report at that time, which valued the property at $475,000. According to Local Bankruptcy Rule 9013–1(1)(g), an opposition to a motion must be filed and served not later than 14 days before the hearing.

At the June 15th hearing on this matter, the court announced that the opposition pleading was untimely. Thus, the court implicitly accepted Debtor's appraisal in the amount of $470,000. Katz has not disputed the Debtor's valuation in this appeal. Notwithstanding its ruling of untimeliness, the court invited Katz's legal argument, and engaged in a discussion concerning Katz's opposition.

■ Debtor contends that Katz cannot raise any issues on appeal that were presented in the Supplemental Opposition when the court found the opposition to be untimely. Generally, the Panel cannot consider arguments that were not raised or briefed before the bankruptcy court. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir.1992). In this case, however, the bankruptcy court considered the issue at the hearing. In addition, the Panel has discretion to consider an argument raised for the first time on appeal if the "issue presented is purely one of law and either does not depend on the factual record developed below, or the per-

tinent record has been fully developed." *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985).

■ The bankruptcy court has broad discretion to apply its local rules. *Qualls By and Through Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 842 (9th Cir.1994). Katz's appraisal was found to be untimely, and the court, in its discretion, did not consider that evidence. However, the court did consider Katz's legal argument, which is the foundation of Katz's appeal. Thus, the legal issue presented in the supplemental pleading is reviewable by the Panel, based on these facts.

### B. Avoidance of the Katz Liens

■ The bankruptcy court's order avoiding the Katz lien implicitly determined that Debtor was entitled to his claimed homestead exemption in the amount of $75,000. *See* Cal.Civ.Proc.Code § 704.730. Although federal courts decide the merits of state exemptions, the validity of claimed state exemptions is controlled by the applicable state law. *In re Anderson*, 824 F.2d 754, 756 (9th Cir.1987). The validity or amount of the exemption have not been disputed in this appeal. Nevertheless, a brief review of Debtor's exemption is necessary for a clear understanding of this appeal.

■ California law provides two alternative mechanisms for protecting the homestead: the declared and the non-declared (also called the "automatic") homestead exemption. The automatic and declared homesteads are separate and distinct protections. *In re Mulch*, 182 B.R. 569, 573 (Bankr.N.D.Cal.1995). A person may qualify for either. *In re Pham*, 177 B.R. 914, 917 (Bankr.C.D.Cal.1994). The amount of both homestead exemptions are the same, but the appropriate context for applying each differs.

■ All property owners have an automatic exemption, which does not arise absent a forced judicial sale. *In re Knud-*

*sen,* 80 B.R. 193, 195 (Bankr.C.D.Cal. 1987).[1] Should a forced lien sale occur, a debtor will receive his statutory homestead exemption before payment of the judgment lien "because a debtor's homestead exemption is senior in priority to a judgment lien." *In re Wilson,* 90 F.3d 347, 351 (9th Cir.1996); Cal.Civ.Proc.Code § 704.850. According to the automatic homestead provisions, the property cannot be sold in a forced sale unless the proceeds are used to satisfy a judgment debtor's homestead exemption before being applied to satisfy a judicial lien. *See* Cal.Civ.Proc. Code § 704.800(a).

■■■■ The purpose of recording a declared homestead, on the other hand, is to protect an owner in the event of a voluntary sale. *See Pham,* 177 B.R. at 917 (declared homestead exemption adds benefits to the automatic homestead exemption). If a declared homestead is sold voluntarily, the proceeds of the sale will be exempt in an amount equal to the exemption for a period of six months after the date of sale, or the proceeds may be invested in a new dwelling within six months and retain the same effect of the prior recorded homestead declaration. *In re Amiri,* 184 B.R. 60, 62 (9th Cir. BAP 1995). The declared homestead only protects a homeowner's equity against subsequently recorded judicial liens, however, which can only attach to the amount of any surplus equity over the total of (1) all prior liens and encumbrances on the declared homestead, and (2) the homestead exemption. Cal.Civ.Proc.Code §§ 704.950(2)(c); 704.960.

■■■■ Since Katz recorded his lien before Debtor recorded his declaration of homestead, and there was, undisputedly, equity to which the lien could attach (and no existing declared homestead exemp-

tion), Katz's lien attached in its entirety to the real property.[2] Cal.Civ.Proc.Code § 697.340(b) (judgment lien attaches to all present and future interests in real property that are subject to enforcement of the money judgment). Thus, in a voluntary sale, Katz's lien either would have to be satisfied by the proceeds or it would remain on the property.

■■■■ Katz places great significance on his lien status in a voluntary sale context, but such status is irrelevant to this chapter 7 case and lien avoidance proceeding. This is because the filing of a bankruptcy petition is the functional equivalent of a forced or involuntary sale under California law, thus allowing a claiming debtor to have the rights, benefits and protections of the automatic homestead provisions. *See In re Mayer,* 167 B.R. 186, 189 (9th Cir. BAP 1994); *In re Herman,* 120 B.R. 127, 131–32 (9th Cir. BAP 1990); *In re Cole,* 93 B.R. 707 (9th Cir. BAP 1988). In a forced or involuntary sale context, the practical effect of the homestead, whether declared or automatic, is the same under California law: "the homestead trumps the judgment lien, and the debtor's exemption is deducted from the proceeds before the judgment creditor recovers." *See In re Scovis,* 231 B.R. 336, 340 (9th Cir. BAP 1999).

The California legislature and Congress had the same policy in mind, in creating or authorizing exemptions, so that judgment creditors or a bankruptcy trustee cannot take all property belonging to a judgment debtor to satisfy creditors' claims. *In re Norman,* 157 B.R. 460, 461 (Bankr. C.D.Cal.1993). "Without this protection, an underclass of perpetually impoverished citizens would be created, a result harmful

---

1. The California Constitution requires the legislature to protect "from forced sale a certain portion of the homestead ...." CAL. CONST. art. XX, § 1.5.

2. The validity of Katz's judicial liens is not an issue in this appeal. Katz claims an original

judicial lien, recorded prior to Debtor's declared homestead, in the amount of $48,-224.23, and a renewed lien of $83,902.88, which was recorded after the recordation of the homestead declaration. Both liens were avoided in the court's order.

to those individuals as well as the community at large." *Id.*

California law[3] and the Bankruptcy Code ensure that the state exemptions are available to debtors in bankruptcy cases regardless of whether a non-money judgment sale occurs. *Id.* at 464–65. In addition, the California legislature "intended to grant bankruptcy debtors all of the exemptions afforded to judgment debtors, including the homestead exemption, in their entirety and without limitation." *In re Pladson,* 35 F.3d 462, 465 (9th Cir.1994).

▇▇▇ Undeterred by such statutory construction and public policy, Katz contends that his lien should be accorded the same status as a consensual lien in the calculation of exemption impairment under federal law, and not be avoidable in bankruptcy.

Section 522(f) provides, in part, that a debtor:

> [M]ay avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is
>
> (A) A judicial lien. . . .

The Bankruptcy Reform Act of 1994[4] enacted a new subsection 522(f)(2)(A). That subsection sets forth a mathematical formula to determine whether a lien impairs an exemption. *In re Wilson,* 90 F.3d 347, 350 (9th Cir.1996). The amended section applies to bankruptcy cases filed after October 22, 1994, which includes the instant case. *Id.*

Section 522(f)(2) provides a formula for calculating the extent to which a lien impairs an exemption: add the lien, all other liens on the property, and the "amount of the exemption that the debtor could claim if there were no liens on the property" and then subtract from that amount the value of the debtor's interest in the property in the absence of any liens. In this case, the calculation would be as follows:

| | |
|---|---:|
| Katz lien | $ 48,224.23 |
| Plus: Prior liens | $411,227.88 |
| Plus: Homestead exemption | $ 75,000.00 |
| | $534,452.11 |
| Less: Property value | (470,000.00) |
| | $ 64,452.11 |

Since the exemption is impaired by the amount of $64,452.11, and the Katz lien is less than the $64,452.11 impairment amount, the lien is avoidable in its entirety. *Hanger,* 217 B.R. at 595.[5]

Katz concedes that his liens impair Debtor's exemption under the formula, but argues that Congress did not consider state law priority rights in enacting the formula. He proposes that a prerecorded judgment lien should be calculated by subtracting all consensual liens and liens prior to the declared homestead—in this case totaling $411,227.88—from the value of the property—$470,000[6], which would leave $58,772.12 in surplus equity. His $48,-224.23 lien, therefore, could not be avoided.

Katz relies on *In re Amiri,* 184 B.R. 60 (9th Cir. BAP 1995), an automatic homestead case, for the proposition that a debtor may not avoid a lien when the debtor has not recorded a prior homestead declaration. *Amiri* is distinguishable on its facts from this case. Moreover, *Amiri* does not address on the merits, the priority issue between the judicial lien and the declared homestead.[7]

3. California has opted out of the "federal" set of exemptions listed in § 522(d), and debtors are entitled to exemptions under state law. Cal.Civ.Proc.Code § 703.130.

4. Pub.L. No. 103–394, § 303, 108 Stat. (1994 U.S.C.C.A.N.) 4105, 4132.

5. Using Katz's renewed lien in the amount of $83,902.88 would also yield such impairment: $83,902.88 plus $411,227.88 plus $75,000 equals $570,130.76 minus $470,000 equals $100,130.76, which exceeds the lien.

6. Although Katz uses his appraiser's $475,000 value in this calculation, the panel previously determined that the bankruptcy court did not abuse its discretion in declining to accept the appraisal as untimely, and implicitly accepting the debtor's valuation of $470,000.

7. In *Amiri,* the BAP stated, *in dicta,* that, since no declaration of homestead was filed, the judicial lien attached to the Amiris' residence; but if a declaration of homestead had been filed, "it is clear that the . . . judicial lien

The issue in *Amiri* was whether a creditor's lien impaired the automatic homestead exemption when there was little or no surplus equity in the property—*i.e.* equity that is left over after subtracting the consensual liens plus the automatic homestead exemption. *Amiri* applied the law as it then existed, and held that the creditor's lien did not impair the exemption because the debtors received the full exemption amount. *Id.* (citing *In re Chabot*, 992 F.2d 891 (9th Cir.1993)).[8] The instant appeal also concerns the automatic homestead exemption. However the *Chabot* case, which was applied in *Amiri*, is no longer the applicable law.

Fundamentally, Katz's argument questions the authority of federal law to remove a lien which, but for the bankruptcy, would have remained against the property. However, this is exactly the type of lien the California legislature and Congress intended, in order to protect a debtor's fresh start from a lien which would impair the debtor's homestead exemption once he or she emerges from bankruptcy. *In re Mulch*, 182 B.R. 569, 575 (Bankr.N.D.Cal. 1995).

Here, the bankruptcy court drew upon well-established case law, which has not been overruled, to determine that federal bankruptcy law trumps the state priority scheme when it comes to avoiding liens. *In re Baxter*, 19 B.R. 674, 675 (9th Cir. BAP 1982) (section 522(f) enables the debtors to avoid pre-attached liens even though the liens would have remained unimpaired under the California homestead law); *In re Stacher*, 50 B.R. 18, 19 (Bankr.E.D.Cal. 1985). In turn, these cases are grounded on the philosophy that "when analyzing § 522(f) lien avoidance problems as a matter of federal law, bankruptcy courts are instructed to 'disregard some element of realty' and consider, in the abstract, whether the debtor would be entitled to an exemption under state law if the lien did not exist... whether the debtor would be entitled to an exemption under state law *'but for the lien itself.'* " *In re Hastings*, 185 B.R. 811, 814 (9th Cir. BAP 1995) (quoting *Owen v. Owen*, 500 U.S. 305, 311, 111 S.Ct. 1833, 1837, 114 L.Ed.2d 350 (1991)) (emphasis in original).

Thus, the ultimate issue in this appeal is whether the homestead exemption is impaired so that the lien can be avoided under § 522(f). The focus is not on state law lien priority, but on the meaning in the Bankruptcy Code of the phrase "to the extent that such lien impairs an exemption to which the debtor would have been entitled." The amended § 522(f) was intended to make the statutes more favorable for debtors, and protect their "fresh start" by allowing them the full benefit of the exemption and the benefit of any post-avoidance appreciation in the value of the property. *Hanger*, 217 B.R. at 592; H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318.

---

would have been avoided." *Id.* at 63. Katz believes this language suggests that nonavoidance results either where a debtor fails to file a prior declared homestead, as in *Amiri*, or where the judicial lien has priority over the declared homestead, as in the instant case.

Katz's interpretation mixes apples and oranges, *i.e.*, the lien's validity versus the lien's impairment of the exemption. In *Amiri*, there was little or no surplus equity to which a judicial lien could attach if a declared homestead had been filed, and a lien which could not attach would have been invalid. In this case there is no dispute concerning the validity of Katz's lien.

**8.** *Chabot* held that an exemption was not impaired unless it was "diminished in value," and a lien that did not impact the debtors' ability to recover their homestead exemption could not be avoided, including even the unsecured portion of the lien. *Id.*, 992 F.2d at 894–95. This holding was later overruled by the enactment of the Bankruptcy Reform Act and the new § 522(f). *Amiri*, 184 B.R. at 61 n. 3 (noting that "under the newly enacted § 522(f)(2) there would be a different result"; also noting that the new section was not retroactive).

Such an intention is also reflected in the liberal interpretation of the California homestead laws in favor of the homeowner. *In re Jones,* 106 F.3d 923, 926 (9th Cir. 1997). Moreover, in California, consensual lienholders and judgment lienholders are not treated equally; there is no support for treating Katz in a manner similar to that of a consensual lienholder, where Debtor did not voluntarily encumber his property with the Katz lien. *See Smith v. James A. Merrill, Inc.,* 64 Cal.App.4th 94, 101, 75 Cal.Rptr.2d 108, 112–113 (Cal.App. 1998) (consensual lienholders junior to judgment creditor nevertheless succeeded to the owner's interest in the homestead).

The Bankruptcy Code should not be read to abandon past bankruptcy practice absent a clear indication that Congress intended to do so. *In re Bonner Mall Partnership,* 2 F.3d 899, 912 (9th Cir. 1993). Therefore, the Panel is not persuaded that the amended Code was intended to preserve a creditor's state law lien status, as Katz would have us decide. The bankruptcy court was correct, therefore, as a matter of law, that Katz's liens impaired Debtor's homestead exemption, and were avoidable in their entirety.

### CONCLUSION

The legal issue presented by this appeal is not novel, but has been previously decided unfavorably to creditors such as Katz based on the Bankruptcy Code's definition of an impairing lien as one which impairs an exemption to which the debtor would have been entitled but for the lien itself. *Owen,* 500 U.S. at 309, 111 S.Ct. at 1836. The 1994 amendment to § 522(f) did not alter this case law or statutory interpretation. California entitles debtors to the full range of state exemptions. The federal impairment formula, under which Katz's liens were properly avoided, promotes the policies of both the California legislature and the Bankruptcy Code, by insuring the debtor's opportunity to receive the full amount of the homestead exemption. The bankruptcy court's interpretation of the law was correct, and its Order is AFFIRMED.